IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CASSANDRA C DE BACA,
as Personal Representative of the
ESTATE OF BEN C DE BACA, Deceased,

    Plaintiff,

vs.                                                           No. 17-CV-1058 JB-LF

TOWN OF BERNALILLO ex rel.
TOWN OF BERNALILLO POLICE DEPARTMENT;
OFFICER JEREMIAH BENJEY,
sued in his individual capacity;
OFFICER SHAWN VIGIL,
sued in his individual capacity;
COUNTY OF SANDOVAL ex rel.
SANDOVAL COUNTY SHERIFF'S DEPARTMENT;
OFFICER PATRICK SEGURA,
sued in his individual capacity;
SERGEANT JAMES LAPORTE,
sued in his individual capacity; and
OFFICERS JOHN DOES 1-10,
sued in their individual capacities,

    Defendants.

## DEFENDANT PATRICK SEGURA'S
## MOTION FOR SUMMARY JUDGMENT AS TO COUNT III
## (QUALIFIED IMMUNITY)

COMES NOW Defendant Patrick Segura, by undersigned counsel, pursuant to Fed.R.Civ.P. 56, and respectfully moves the Court to enter summary judgment in his favor as to Count III of the Complaint for Wrongful Death [Doc. 1-1] ("Complaint").

THE GROUNDS for this motion are that as demonstrated herein, there is no genuine issue as to any material fact and the undisputed evidence shows that Defendant Segura is entitled to qualified immunity and judgment on Count III as a matter of law.[1]

---

[1] Defendant Segura, along with Defendant County of Sandoval, filed a Motion to Dismiss Counts I and II of the Complaint (see Doc. 5). On November 30, 2017, Plaintiff and Defendants stipulated to the dismissal with prejudice of Counts I and II. See Doc. 20. Therefore, Count III is the sole remaining claim pending against Defendant Segura or Defendant County of Sandoval.

## STANDARD OF REVIEW

### Summary Judgment in General

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party meets its initial burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues to justify a trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

The nonmoving party cannot simply show that one or more facts are disputed; the dispute must be "genuine" and must involve "material" facts. In order to avoid summary judgment, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And it is clear that summary judgment is not a "disfavored procedural shortcut," but rather, is "an integral part of the Federal Rules as a whole." Celotex Corp. v. Catrett, supra, 477 U.S. at 327.

### Qualified Immunity

Where an individual defendant asserts qualified immunity (as is the case here), the burden shifts; the plaintiff must come forward with sufficient evidence to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of the conduct. See McBeth v. Himes, 598 F.3d 708, 716 (10th Cir. 2010). The Court may decide the issues in any order. See Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1277 (10th Cir. 2009).

## PLAINTIFF'S CAUSE OF ACTION UNDER COUNT III

In Plaintiff's Count III (the subject of this motion), Plaintiff sues Defendant Segura pursuant to 42 U.S.C. § 1983 for alleged violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges a violation of the right to be free from excessive force by police officers, which proximately caused her decedent's wrongful death. See Complaint [Doc. 1-1], ¶¶ 104-117.

As part of her claim, Plaintiff alleges that Defendant Segura, a law enforcement officer employed by the Tribal Police Department of the Pueblo of Santa Ana and commissioned as a deputy sheriff by the County of Sandoval Sheriff's Office, "acted under the color and pretense of the laws of the State of New Mexico." See Complaint at ¶¶ 5, 8, 105; see also ¶ 113 (Defendants acted "under the color of state law").

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The attached affidavits, exhibits and other materials demonstrate that the following material facts are undisputed.

1. From 2012 through the present, Defendant Patrick Segura has been employed by and commissioned as a law enforcement officer for the Pueblo of Santa Ana Tribal Police Department, and he is a full time employee of Santa Ana Pueblo, which pays the entirety of his salary and employee benefits. See Exhibit 2, ¶ 3.

2. Santa Ana Pueblo is a sovereign Native American Tribe located within the County of Sandoval, State of New Mexico. See Exhibit 5, ¶ 3.

3. On September 6, 2015, at 6:30 p.m., Defendant Segura was on duty for the Santa Ana Pueblo Tribal Police Department, dressed in his tribal police uniform and displaying his tribal badge of office. Defendant was sitting at his desk in the police office, which is located on the Pueblo of Santa Ana reservation, working at his computer. As he worked, he monitored transmissions of the Sandoval County Regional Emergency Communications Center ("SCRECC"), by his hand-held tribal radio. Defendant monitored the frequency shared by the Town of Bernalillo Police Department and the Santa Ana Pueblo Tribal Police Department. See Exhibit 2, ¶ 4.

4. Dispatch services are provided to local law enforcement by the SCRECC, which uses separate radio frequencies for transmissions to and from the Sandoval County Sheriff's Department (and a number of smaller jurisdictions such as Jemez Pueblo and the Cuba Police Department, which share the frequency with the Sheriff's Department); the City of Rio Rancho Police Department; and the one monitored by Defendant Segura on September 6, 2015, which is shared by the Town of Bernalillo Police Department and Santa Ana Pueblo Tribal Police Department. See Exhibit 3, ¶ 7.

5. As a matter of course, Sandoval County Sheriff's deputies do not monitor radio transmissions between the SCRECC and the non-Sheriff law enforcement agencies which utilize their own, separate radio frequencies. See Exhibit 3, ¶ 7.

6. At approximately 6:30 p.m. on September 6, 2015, Defendant Segura listened as the SCRECC transmitted a call over the City of Bernalillo-Santa Ana Pueblo frequency for all units to be

4

on the lookout for a motor vehicle crash at the McDonald's on State Road 528 and Montoya Road, and he heard SCRECC advise that a male subject had been seen fleeing from the scene and running towards Walmart, which he knew was located across the street. See Exhibit 2, ¶ 5; Exhibit 1, ¶¶ 4-5; see CD of the September 6, 2015 SCRECC dispatches, lodged as Exhibit 6.

7. From Defendant Segura's own knowledge and experience, he was aware that the McDonald's is located in the City of Rio Rancho, the Walmart across the street from the McDonald's is located in the Town of Bernalillo, and Santa Ana Pueblo-owned land is very close to that area. Defendant was aware that the area in question is a sort of "checkerboard" or "sawtooth" of mixed jurisdictions among the City of Rio Rancho, Town of Bernalillo and pueblo-owned lands. See Exhibit 2, ¶ 6.

8. According to survey maps prepared by the County Assessor, the approximate distance from Santa Ana Pueblo tribal land to the McDonald's property line is 1,265 feet (approximately .24 mile), and the approximate distance from Santa Ana Pueblo tribal land to the Walmart property is 1,475 feet (approximately .28 mile). See Exhibit 4, ¶¶ 1-6; Exhibit 4-A.

9. As Defendant Segura continued to monitor the radio, he heard Unit 407 of the Bernalillo Police Department respond to SCRECC, stating that he (Officer Vigil) and Officer Benjey (another Bernalillo police officer) were busy at a domestic disturbance call in Bernalillo, and then heard Unit 407 ask the SCRECC dispatcher, "Can you see if Santa Ana can send someone over there?" Defendant

heard SCRECC tell Unit 407 yes, and also heard the SCRECC advise that there was now a fight at the Walmart. See Exhibit 2, ¶ 7; Exhibit 1, ¶ 6.

10. After hearing the request from the Bernalillo officer to the SCRECC for assistance from a Santa Ana tribal police officer, Defendant Segura spoke to Santa Ana Police Sergeant Foster, his immediate supervisor, who was also in the tribal police office. Sgt. Foster instructed Defendant Segura to proceed to the scene to assist the Bernalillo police officers, as they had requested. See Exhibit 2, ¶ 8.

11. Santa Ana Pueblo General Order No. 01-04.1 defines the jurisdiction of the Pueblo's tribal police officers and delineates the geographic area of primary jurisdiction of the tribal officers. See Exhibit 5, ¶ 5; Exhibit 5-A (Order).

12. Defendant Segura was aware of General Order No. 01-04.1. See Exhibit 2, ¶ 9.

13. Under the terms of General Order No. 01-04.1, the jurisdiction of the tribal police officers is limited to the geographic area within the exterior boundaries of Santa Ana Pueblo as well as the other areas outside the boundaries that are owned by the pueblo. As part of their authority and jurisdiction to act in their capacity as tribal police officers, however, tribal officers are permitted to provide support, backup and assistance to other local law enforcement agencies, including police officers from the Town of Bernalillo and City of Rio Rancho, and to do so outside the exterior pueblo boundaries or outside of lands owned by the pueblo,

when requested to do so by the other local law enforcement agency. When such a request for support, backup or assistance is made and a tribal police officer responds to the request, he or she is deemed by the General Order to be under the immediate command of the requesting agency's chief law enforcement officer or his or her designee, but at all time remains under the ultimate command of the Chief of the Santa Ana Pueblo Tribal Police Department. See Exhibit 5, ¶ 6.

14. After receiving instructions from his supervisor to proceed to the off-reservation scene on September 6, 2015, Defendant Segura proceeded to Walmart in his tribally-issued, marked police vehicle to assist the Bernalillo police officers, while he continued to monitor the SCRECC radio transmissions. Defendant heard Officer Benjey advise that he was en route to Walmart, and heard SCRECC advise that the subject was by the "General Merchandise" entrance at Walmart. Defendant Segura heard Officer Benjey state that he was the only officer en route and ask dispatch to send another unit to assist, and Defendant Segura then advised SCRECC that he was "direct" with the call (meaning that he had heard the call for assistance) and that he was en route. Thereafter, Defendant heard Officers Benjey and Vigil notify the SCRECC that they had arrived. See Exhibit 2, ¶ 10; Exhibit 1, ¶ 6.

15. While en route, Defendant Segura heard background noises sounding like rustling or scratching, and, based on his experience, he concluded that the officer whose radio had picked up the noise was involved in some sort of altercation, and he therefore sped to

7

the scene using his emergency lights and siren, seeking to provide support, backup and assistance to the other police officers, as had been requested. Defendant Segura notified SCRECC when he arrived. See Exhibit 2, ¶ 10.

16. In addition to his commission as a tribal police officer of the Santa Ana Pueblo Tribal Police Department, Defendant Segura, along with the other tribal police officers, also was commissioned by the Sandoval County Sheriff as a Special Deputy, and by the New Mexico State Police Chief as a New Mexico peace officer. See Exhibit 2, ¶ 11; Exhibit 5, ¶ 4.

17. The appointments of the Santa Ana Pueblo tribal officers as Special Deputy Sheriffs were made by Sheriff Douglas C. Wood pursuant to the authority conferred upon him by § 4-41-10 NMSA 1978 and § 29-1-11(G), to appoint special deputies when, in his opinion, it is necessary and required in order to help preserve the peace. Special Deputies are different than regular Deputy Sheriffs, the latter of whom are all hired, supervised and paid their salaries by the Sandoval County Sheriff's Office, and as to whom, by statute, the Sheriff is required to file notice of appointments with the Clerk of the Thirteenth Judicial District Court in Sandoval County. The Sheriff is not required to file notice of appointments of Special Deputy Sheriffs, and he did not do so. See Exhibit 3, ¶ 6.

18. The scope of jurisdiction of commissioned tribal officers such as Defendant Segura in their capacity as Special Deputies is limited to enforcing New Mexico state traffic and criminal laws within the exterior boundaries of Santa Ana Pueblo lands as to

non-Indians, and to assist regular Deputy Sheriffs, who are employed by the County of Sandoval, when requested to do so by the Sheriff or his designees including requests by regular Deputies. The intended scope of their appointments as Special Deputies does not allow them to patrol or act independently in Sandoval County as regular Deputy Sheriffs, beyond the reservation boundaries, unless they expressly are requested to do so by the Sheriff or his designees. Nothing in their appointment as Special Deputies, however, is intended to limit or curtail their jurisdiction to act as tribal officers pursuant to authority conferred upon them by sovereign Santa Ana Pueblo. See Exhibit 2, ¶ 12; Exhibit 3, ¶ 6.

19. In the situation that arose on September 6, 2015 involving Plaintiff, no regular Sandoval County Deputy Sheriffs were dispatched to the scene, nor did any personnel from the Sandoval County Sheriff's Department request that any cross-commissioned Special Deputy, including but not limited to Defendant Segura, assist with or respond to that call or provide backup and/or support to the officers on scene, nor did anyone from the Sandoval County Sheriff's Department request the SCRECC to dispatch any Special Deputy or tribal police officer to the scene. See Exhibit 3, ¶ 8; Exhibit 2, ¶ 12.

20. The scope of jurisdiction of commissioned tribal officers such as Defendant Segura to act in their capacity as New Mexico peace officers, as appointed by the New Mexico State Police Chief, is limited to enforcing New Mexico state traffic and criminal laws within the exterior boundaries of the Santa Ana Pueblo reservation,

except in cases of so-called hot pursuit of an offender who flees beyond the exterior boundaries of the reservation, and in which cases the tribal officer is permitted to act beyond the boundaries. See Exhibit 5, ¶ 7; Exhibit 5-B, at § 2; Exhibit 2, ¶ 13.

## ARGUMENT AND AUTHORITY

Count III asserts a cause of action under 42 U.S.C. § 1983 against Patrick Segura in his individual capacity, and alleges that Defendant Segura, at all material times, acted "under the color of state law." See Complaint at ¶¶ 105, 113. It has long been an essential element of any Section 1983 claim that the person sued must have been acting under color of state law. See, e.g., Parratt v. Taylor, 451 U.S. 527, 535 (1981); and see also, Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)("the party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor").

It is settled law, moreover, that Indian tribes and pueblos are not states within the meaning of the Constitution or under Section 1983, and that a person acting under color of tribal law therefore cannot be sued under 42 U.S.C. § 1983. See Chapoose v. Hodel, 831 F.2d 931, 934-35 (10th Cir. 1987); McKinney v. State ex rel. Dep't of Human Servs., 925 F.2d 363, 365-66 (10th Cir. 1991); Burrell v. Armijo, 456 F.3d 1159, 1174 (10th Cir. 2006), cert. denied 549 U.S. 1167 (2007)("A § 1983 action is unavailable for persons alleging a deprivation of constitutional rights under color of tribal law")(quotation marks and citation omitted); accord, Pistor v. Garcia, 719 F.3d 1104, 1115 (9th Cir. 2015)

(case at bar confirms "the well-established rule that a § 1983 claim cannot be maintained against defendants who act under color of tribal rather than state law"); Williams v. Bd. of County Comm'rs, 125 N.M. 445, 450, 963 P.2d 522, 527 (Ct.App. 1998) ("those acting under tribal law do not act under color of state law within the meaning of § 1983").

On the other hand, a tribal police officer who is commissioned as a deputy sheriff by a county sheriff, <u>and who acts under the authority of his or her commission as a deputy</u>, may be deemed to act as a state officer and thus under color of state law for purposes of Section 1983. See Loya v. Gutierrez, 2015-NMSC-017, at ¶¶ 15-16, 350 P.3d 1155, 1160 (2015).

In Loya, a pueblo police officer who was commissioned as a Deputy Sheriff (<u>not</u> a Special Deputy Sheriff, as here) arrested a non-Indian while within the exterior boundaries of the pueblo, charging him with violation of New Mexico law. The Supreme Court, citing the Pueblo of Pojoaque Civil Traffic Code regarding the jurisdictional limitations on pueblo officers imposed therein, stated:

> [T]he very reason [defendant], a <u>tribal</u> police officer, is subject to a Section 1983 claim for actions taken under color of <u>state</u> law, is because he was acting under his state authority as a deputy sheriff, not tribal authority, when he charged, detained, and prosecuted [plaintiff] under state law.

Loya v. Gutierrez, supra 2015-NMSC-017 at ¶ 8, 350 P.3d at 1159 (emphasis in original); and see also opinion ¶ 19, 350 P.3d at 1161 (tribal police officer at the time of the arrest "was acting in an official capacity as a duly-sworn sheriff's deputy; he could not

11

have legally arrested [plaintiff], a non-Indian, any other way.")[2]

In the case at bar, in contrast, the undisputed evidence demonstrates that Tribal Police Officer Segura was not acting under his commissions, as New Mexico peace officer or Special Deputy, when he responded to the radioed request for assistance from the City of Bernalillo police officer: his commissions did not authorize him to do so. The former commission is limited to acts within the exterior boundaries of the Santa Ana Pueblo reservation, while the latter commission is limited to the same geography, unless the request for off-reservation assistance is made by the Sheriff or the Sheriff's designee (which, according to the undisputed facts, it was not). Instead, Defendant acted under his authority and in his capacity as a tribal police officer pursuant to Santa Ana Pueblo General Order No. 01-04.1, which expressly authorizes tribal officers *qua* tribal officers to provide support, backup and assistance to other local law enforcement agencies, including to police officers from the Town of Bernalillo, and to do so outside the exterior pueblo boundaries, when requested to do so by the other local law enforcement agency. Under the Order, moreover, Defendant Segura remained subject to the ultimate command of the Chief of the Santa Ana Pueblo Tribal Police Department. See Undisputed Material Facts Nos. 11-13, 16-20.

---

[2] The Supreme Court noted that the Sheriff's commission of the tribal police officer as a Santa Fe County deputy sheriff was "for the purposes of enforcing state traffic laws and criminal statutes against non-Indian offenders for offenses committed within the exterior boundaries of Pojoaque Pueblo." See Loya v. Gutierrez, supra, 2015-NMSC-017 at ¶ 7, 350 P.3d at 1158. The arrest in Loya was, in fact, made within the pueblo's exterior boundaries.

12

The fact that the geographic area in which assistance was requested lay within the interlocking sawtooth or checkerboard of tribal, city and town boundaries, moreover--approximately .24 mile from pueblo-owned land over which tribal police officers had exclusive jurisdiction, and the subject having actively moved from one adjacent jurisdiction (the city) to another (the town) in a matter of minutes (see Facts Nos. 7 and 8, supra--only emphasizes the conclusion that Officer Segura was at all pertinent times acting under color of tribal law.

A noteworthy case, albeit decided in a non-Section 1983 context, is Schultz v. Pojoaque Tribal Police Dep't, 2014-NMCA-019, 317 P.3d 866 (Ct.App. 2013). In Schultz, a tribal police officer was held to have suffered an accident "arising out of and in the course of [tribal] employment" when he acted while off-duty, voluntarily chaperoning a church youth group trip to an area outside the reservation boundaries, even though the officer was neither on-call nor wearing his tribal police uniform at the time. Looking in part to the pueblo's regulations pertaining to the authority of its tribal police (such as the General Order here), the Court found that, although the incident occurred outside of the pueblo's external boundaries, the officer nevertheless was acting in his capacity as a tribal officer when he attempted to save a drowning child and lost his life in the process. Significantly, the sovereign pueblo's own delineation of the jurisdiction and authority of its police force, as set forth in its regulations, helped the Court to define the scope of such jurisdiction.

Under the totality of the undisputed facts and circumstances in the case at bar, including the Santa Ana Pueblo General Order, it is clear and undisputed that Officer Segura was acting under color of tribal law, not state law, and that Count III therefore is not justiciable.

## CONCLUSION

For the reasons set forth, the Court should grant the motion and dismiss with prejudice Count III of the Complaint as against Defendant Segura, which is the last remaining claim against him, and should award such other relief as the Court deems to be just, proper and appropriate.

Respectfully submitted,

**LAW OFFICE OF MICHAEL DICKMAN**

By: **/s/ Michael Dickman**
　　**MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, New Mexico 87504
(505) 989-9360
mikedickman@yahoo.com
**Attorney for Defendants**
**County of Sandoval and Segura**

## CERTIFICATE OF SERVICE

I certify that I caused copies of this motion
to be electronically served on
all counsel of record
at their respective email addresses as registered on CM/ECF
on the date of filing hereof

**/s/ Michael Dickman**
　**MICHAEL DICKMAN**